UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LISA O., individually and as guardian of H. H., a minor,<br><br>                    Plaintiffs,<br><br>          v.<br><br>BLUE CROSS OF IDAHO HEALTH SERVICE INC., and HEALTHWISE, INC.,<br><br>                    Defendants. | Case No. 1:12-cv-00285-EJL-REB<br><br>**ORDER ON REPORT AND RECOMMENDATION** |

On February 24, 2015, United States Magistrate Ronald E. Bush issued a Report and Recommendation ("Report"), recommending that each of the Defendants' Motions for Summary Judgement be denied and that Plaintiffs' Motion for Summary Judgment be granted. (Dkt. 132.) Any party may challenge the Magistrate Judge's proposed recommendation by filing written objections within fourteen days after being served with a copy of the Report. 28 U.S.C. § 636(b)(1)(C). The district court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* The district court may accept, reject, or modify in whole or in part, the findings and recommendations made by the Magistrate Judge.

**ORDER ON REPORT AND RECOMMENDATION- 1**

*Id.*; *see also* Fed. R. Civ. P. 72(b).

Both Defendants filed objections to the Report arguing it erred in its conclusions and findings. (Dkt. 134, 135, 136.) Plaintiffs filed responses to those objections. (Dkt. 139, 140.) The Court has considered the parties' contentions and finds as follows.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Where the parties object to a report and recommendation, this Court "shall make a de novo determination of those portions of the report which objection is made." *Id.* Where, however, no objections are filed the district court need not conduct a *de novo* review. To the extent that no objections are made, arguments to the contrary are waived. *See* Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1) (objections are waived if they are not filed within fourteen days of service of the Report and Recommendation). "When no timely objection is filed, the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir.1974)).

In this case, both parties have filed objections and, therefore, the Court has conducted a *de novo* review of those portions of the Report. The Court has also reviewed the entire Report as well as the record in this matter for clear error on the face of the record and finds as follows.

## DISCUSSION

**ORDER ON REPORT AND RECOMMENDATION- 2**

The factual and procedural background of this case are well stated in the Report and not objected to by the parties. As such, the Court adopts the Report's recitation of the general background of the case. (Dkt. 132.) In short, this dispute concerns Plaintiff Lisa O.'s claim seeking reimbursement for expenses she incurred for her minor daughter's, Plaintiff H.H., attendance at two boarding schools under a health benefits plan (the "Plan") provided by her then employer Defendant Healthwise, Inc. ("Healthwise"). The Plan was administered by Defendant Blue Cross of Idaho Health Service Inc. ("BCI"). Defendants denied the Plaintiffs' requests for coverage as well as her appeals. Defendants maintain the Plaintiffs' claim was waived or released by virtue of the December 19, 2011 General Release of Claims ("Release") and/or was specifically excluded from the Plan. As a result, Plaintiffs brought the action now before this Court.[1] Each of the parties filed Motions for Summary Judgment which were ruled upon in the Report to which the Defendants have filed the objections taken up in this Order.

## 1.    Defendant Blue Cross of Idaho's Objections

BCI objects to the Report's conclusion that the term "vested right" as used in the Release is ambiguous and could be interpreted to encompass Lisa O.'s ERISA appeal of the denial of her claim for benefits under the Plan. (Dkt. 134.) BCI argues "the right to appeal a disputed denied claim is not a vested right under any logical contract interpretation" and

---

[1] Defendant Healthwise has filed a Counterclaim for declaratory judgment, tortious interference with contract, and attorney fees and costs. (Dkt. 93.) The Counterclaim is not directly ruled upon in this Order but may be impacted by the decision stated herein.

**ORDER ON REPORT AND RECOMMENDATION- 3**

that claim could, and was, released under the terms of the Release signed by Lisa O. in this case. In response, Lisa O. maintains she should have been granted summary judgment on this issue because the treatment provided had concluded by the time the Separation Agreement became effective and, therefore, her right to payment under the Plan had vested. (Dkt. 140 at 2.) Alternatively, Lisa O. asserts that the Court should find that the Report correctly concluded that the term "vested rights" is ambiguous and appropriately denied summary judgment to both sides.

The Report found ambiguity in the Release's "vested rights ... for benefits" language concluding that language "could be understood to possibly mean Lisa O.'s right to payment for H.H.'s medical expenses" and that "an ambiguity exists in how the Release applies, if at all, to Plaintiffs' claims against [Defendants]." (Dkt. 132 at 8.) In analyzing this issue, the Report noted the importance of the lack of any definition of the terms "vested right" and "vested" and the Release's language speaking of maintaining vested rights; in other words, the fact that the Release does not exclude all claims makes it possible that Plaintiffs' claims, if they are "vested," are not waived by the Release. (Dkt. 132 at 8-11.) In considering this issue, the Report ultimately concluded that it was ambiguous whether Lisa O.'s claim had "vested" at the time the expenses were incurred – before the Release was signed – and therefore was excluded from the Release's waiver or whether her claim was not a "vested right" and, therefore, subject to the Release's waiver provision. (Dkt. 132 at 10-11.) That ambiguity, the Report concluded, precludes summary judgment for both sides.

The relevant portion of the Release states:

**ORDER ON REPORT AND RECOMMENDATION- 4**

In consideration of the payments, benefits and promises contained in the Separation Agreement...between myself and Healthwise, Incorporated and to the fullest extent permitted under applicable law, I, Lisa O...hereby forever release, discharge and promise not to sue Healthwise and its... "Releasees"...whether known or unknown to me as of December 30, 2011...with respect to any and all claims, liabilities, obligations, debts, damages, demands, losses, judgments, costs and expenses of any kind arising out of or in connection with my employment, compensation, or my separation from employment with Healthwise...that existed or may have existed as of December 30, 2011...including without limitation any Claim under...[ERISA]. This General Release of Claims, however, *does not affect any vested rights* I might have for benefits under any group medical insurance, disability, workers' compensation, unemployment compensation, or retirement program.

Additionally, as part of this General Release of Claims, I agree, to the extent permitted by applicable law, that I will not voluntarily aid, assist or cooperate with any (i) claimants against Healthwise and/or the Releases or (ii) employees (former or current) of Healthwise and the Releases in bringing or pursuing any claims or lawsuits or other proceedings against Healthwise and/or Releases.

(Dkt. 39-4, Ex. A) (emphasis added.)

In support of its objection, BCI points to *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580 (1st Cir. 1993) where the court held that an employee was not entitled to long-term disability benefits because he had waived the same when he agreed to a voluntary severance plan. (Dkt. 134 at 5.) Plaintiffs argue that this case is distinguishable from *Rodriguez-Abreu*. (Dkt. 140 at 5.) The Report concluded that while the parties understanding and intent concerning the waiver of rights were ascertainable in *Rodriguez-Abreu*, the same is not true in this case. (Dkt. 132 at 9-10 n. 4.) This Court agrees with the Report's conclusion in this regard. The findings in *Rodriguez-Abreu* turned on the understanding and intent of the parties that were known to the court whereas the facts going to the parties understanding and intent in this case are not similarly known and/or are in dispute. Further,

**ORDER ON REPORT AND RECOMMENDATION- 5**

the Court does not agree with BCI's broad assertion that the *Rodriguez-Abreu* case stands for the proposition that "under any interpretation, a disputed denied claim cannot be a vested right under a health plan." (Dkt. 134 at 5.) Making such a determination in this case requires resolution of the factual disputes surrounding the understanding and intent of the parties.

BCI also contends that Plaintiffs' claim is not a "vested right" because a vested right is an entitlement to benefit that cannot be unilaterally terminated whereas a denied and disputed ERISA claim, such as Plaintiffs' claim here, can be so terminated. (Dkt. 134 at 2-4.) BCI challenges the Report's interpretation of the Release – that concludes the denial of a disputed claim could be a vested right – arguing such a reading is not reasonable because it renders the Release's waiver of ERISA claims meaningless. (Dkt. 134 at 7.) Instead, BCI asserts that Lisa O.'s ERISA claim is one that can be, and was, released. Plaintiffs counter that once the medical services have been provided obligating the Plan to pay, those benefits are vested under ERISA. (Dkt. 140 at 3.)

The Court has reviewed this issue *de novo* in light of the arguments made by the parties both in their objections to the Report as well as in their initial briefing on the summary judgment motions. Having done so, this Court agrees with the Report's conclusion that the "vested rights" language of the Release is ambiguous and there are disputed facts which preclude entry of summary judgment for either side on this question. On the facts currently before the Court, it is impossible to ascertain whether the claims sought to be recovered in this case are "vested" as defined and/or intended in the Release and whether Plaintiffs knowingly and voluntarily waived those claims as a matter of law. *See Gonda v.*

**ORDER ON REPORT AND RECOMMENDATION- 6**

*The Permanente Medical Group*, Case No. 11-cv-01363-SC, 2015 WL 678969, at *3 (N.D. Cal. Feb. 17, 2015) (Waivers must be made knowingly and voluntarily.); and *Rodriguez-Abreu*, 986 F.2d at 587. What was known, intended, and understood by the parties at the time they entered into the Release as to Plaintiffs' claim for the benefits payments sought here is unknown and/or disputed in this case. Accordingly, the Court will adopt the Report's conclusions in this regard.

## 2.      Defendant Healthwise's Objections

The Motions for Summary Judgment filed by Plaintiffs and Healthwise go to the question of whether BCI properly denied coverage to Plaintiffs' claim for benefits. In the Fall of 2010, BCI denied Plaintiffs' claim for coverage for H.H.'s treatment citing General Exclusion P of the Plan which states that no benefits will be provided for services, supplies, drugs, or other charges that are:

> For Inpatient or Outpatient Custodial Care; or for Inpatient or Outpatient services consisting mainly of educational therapy, behavioral modification, self-care or self-help training, except as specified as a Covered Service in this Plan.

(Dkt. 108-3 at 11) (BCI 1112.)[2] Plaintiffs contested the denial in an appeal arguing H.H.'s treatment was for a Mental or Nervous Condition which is a Covered Service under the Plan as a Psychiatric Care Service and, therefore, Exclusion P did not apply. On April 7, 2011, BCI denied the appeal again citing to Exclusion P but this time also stating that H.H. did not

---

[2] The Court has used the same method for citing to the administrative record in this Order as was employed in the Report. (Dkt. 132 at 13 n. 6.)

**ORDER ON REPORT AND RECOMMENDATION- 7**

meet the medical necessity criteria for treatment in the program. Plaintiffs filed a second level appeal challenging the denial. On June 30, 2011, BCI withdrew its denial based on medical necessity but again upheld the denial pursuant to Exclusion P, concluding that H.H.'s treatment was for "behavioral modification" which is excluded from coverage under the Plan.

The Report states that it could not decide as a matter of law that BCI abused its discretion in its "collective denial" of the claims for coverage. (Dkt. 132 at 35-36.) The Report did, however, find that BCI abused its discretion as a matter of law in "its wholesale disregard of the *entirety* of the nature of the care, and therefore the purported applicability of Exclusion P." (Dkt. 132 at 36) (emphasis in original.) Specifically, the Report concludes that Exclusion P's language stating "except as specified as a Covered Service in this Plan," is not a basis for BCI's denial of coverage because the Plan provides coverage for Psychiatric Care Services, which the Plaintiffs' claims qualify for. (Dkt. 132 at 37.) As such, the Report found that BCI abused its discretion in denying coverage for H.H.'s treatment because that decision was illogical, implausible, and without support in inferences that could reasonably be drawn. (Dkt. 132 at 39.) Thus, the Report recommends granting Plaintiffs' Motion for Summary Judgment and denying Healthwise's Motion for Summary Judgment.

In its objections, Healthwise argues the Report improperly applied the standard of review and challenges its interpretation/application of Exclusion P. (Dkt. 135.) Plaintiffs maintain the Report properly decided the Motions. Furthermore, Plaintiffs argue this Court should re-evaluate the Defendants' failure to effectively communicate with Plaintiffs as an

**ORDER ON REPORT AND RECOMMENDATION- 8**

additional basis for granting their Motion for Summary Judgment. (Dkt. 139.)

## A.      Standard of Review

Healthwise argues the Report improperly shifted the burden of proof and/or failed to properly apply the deferential standard of review applicable in this case. (Dkt. 135.) Healthwise contends that the abuse of discretion standard applies here requiring that the Plan's benefit determination be upheld unless it was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. (Dkt. 135 at 4.) Plaintiffs respond arguing the Report did not improperly shift the burden of proof. (Dkt. 139 at 9.)

The Employee Retirement Income Security Act ("ERISA") "governs the administration of employer-provided benefit pension plans." *Metro. Life Ins. Co. v. Parker*, 436 F.3d 1109, 1111 (9th Cir. 2006). Under ERISA plan administrators, who are fiduciaries, are required to administer their plans "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S .C. § 1104(a)(1)(D). A challenge to an ERISA plan administrator's denial of benefits is "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under *de novo* review, no deference is given to the administrator's decision to deny benefits. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 n. 2 (9th Cir. 2010); *Firestone*, 489 U.S. at 115. Where discretion has been granted to the administrator or fiduciary, however, "the standard of review shifts to abuse of discretion." *Abatie v. Alta*

ORDER ON REPORT AND RECOMMENDATION- 9

*Health and Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir.2006) (en banc) (citing *Firestone*, 489

U.S. at 115); *see also, Met. Life Ins. Co. v. Glenn*, 554 U.S. 105, 110–11 (2008). "[F]or a

plan to alter the standard of review from the default of *de novo* to the more lenient abuse of

discretion, the plan must unambiguously provide discretion to the administrator." *Abatie* 458

F.3d at 963. (citing *Kearney*, 175 F.3d at 1090).

    In this case, the Plan administrator has discretionary authority to determine eligibility

for benefits or to construe the terms of the plan. *Firestone Tire*, 489 U.S. at 115.[3] Thus, the

abuse of discretion standard of review applies here. *Salomaa v. Honda Long Term Disability*

---

[3] The Court notes that Plaintiffs' initial briefing on their Motion for Summary Judgment argued for a *de novo* standard of review or, at best, a significantly reduced abuse of discretion. (Dkt. 106 at 2) (Dkt. 124 at 2-3.) This Court finds that the Report correctly determined that the *de novo* standard does not apply in this case. As to the "reduced" standard, Plaintiffs argued that the Defendants should be afforded less deference because of their "conflicts of interest," the "irregularities" in BCI's handling of the claims, and BCI's incorrect application of the Plan's terms. (Dkt. 106 at 3-6.) The Report concluded that a conflict of interest existed in this case because "[BCI] is an insurer acting as both the plan administrator and the funding source for benefits." (Dkt. 132 at 14.) Therefore, the Report stated it would weigh that conflict of interest as a factor in determining whether there is an abuse of discretion. In its objections, Healthwise argues the Report misstates the facts because BCI was not the "insurer" but was instead the Plan administrator, therefore no such conflict exists. (Dkt. 135 at 11-13.)

    This Court has reviewed the record and finds that BCI was the Plan administrator but not the insurer/funding source for the Plan. (Dkt. 108-1 at 3 n. 1) (Dkt. 39-3 at ¶ 2.) Thus, the Report has misstated the facts in this regard and, as a result, erred in stating that the abuse of discretion standard of review should take into consideration that conflict of interest. (Dkt. 132 at 12-14, 36, 39.) This Court has reviewed the matter *de novo* and applied an abuse of discretion standard that does not factor in any conflict of interest based on BCI's status as the Plan Administrator in making the rulings discussed above.

    That being said, Plaintiffs raised other arguments in their initial briefing and objections that they claim give rise to a "conflicts of interest" that the Court should consider in determining how much deference to give to determinations denying ERISA plan coverage. (Dkt. 124 at 2-3) (i.e., failing to provide specific reasoning for the denial, shifting their basis for denial, and erroneously denying the claim based on the lack of medical necessity.). The Court will address these other arguments within this Order as applicable.

**ORDER ON REPORT AND RECOMMENDATION- 10**

*Plan*, 642 F.3d 666, 673 (9th Cir. 2011). "Under this deferential standard, a plan administrator's decision 'will not be disturbed if reasonable.'" *Stephan v. Unum Life Ins. Co. of America*, 697 F.3d 917, 929 (9th Cir. 2012) (quoting *Conkright v. Frommert*, 559 U.S. 506, 521 (2010)); *Day v. AT & T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012). "This reasonableness standard requires deference to the administrator's benefits decision unless it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Stephan*, 697 F.3d at 929 (internal quotation marks omitted); *Salomaa*, 642 F.3d at 676. Where an administrator acts "arbitrarily and capriciously," it "thereby abuse[s] its discretion." *Id.* at 680.

"A plan administrator abuses its discretion if it renders a decision without any explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or fails to develop facts necessary to its determination." *Pacific Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030, 1042 (9th Cir. 2014) (quoting *Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trustees*, 588 F.3d 641, 649 (9th Cir. 2009); *Day*, 698 F.3d at 1096. "[T]he test for abuse of discretion in a factual determination (as opposed to legal error) is whether 'we are left with a definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Salomaa*, 642 F.3d at 676 (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). "[A]n administrator ... abuses its discretion if it relies on clearly erroneous findings of fact in making benefit determinations." *Id.* (quoting *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1473 (9th

Cir.1994)).

In applying this abuse of discretion standard of review, a reviewing court should "consider all of the relevant circumstances in evaluating the decision of the plan administrator" including weighing any conflict of interest as a factor in its review. *Pacific Shores Hosp.*, 764 F.3d at 1041-42 (discussing *Abatie*, 458 F.3d at 968) ("In all abuse-of-discretion review, whether or not an administrator's conflict of interest is a factor, a reviewing court should consider 'all the circumstances before it,' in assessing a denial of benefits under an ERISA plan."); *Glenn*, 554 U.S. at 108. Similarly, "[p]rocedural errors by the administrator are also weighed in deciding whether the administrator's decision was an abuse of discretion," but "'a single honest mistake in plan interpretation' administration does not deprive the plan of the abuse of discretion standard." *Salomaa*, 642 F.3d at 674, (quoting *Conkright*, 559 U.S. at 509). "When an administrator can show that it has engaged in an "'ongoing, good faith exchange of information between the administrator and the claimant,'" the court should give the administrator's decision broad deference notwithstanding a minor irregularity." *Abatie*, 458 F.3d at 972.

The parties in this case dispute the applicable standard of review. Plaintiffs argue the Court should give less deference to the Defendants' denial of their claim because they failed to provide specific reasoning for the denial, offered inconsistent reasons for the denial, and erroneously denied the claim based on the lack of medical necessity. Pointing to ERISA's procedural requirements, Plaintiffs contend the Defendants failed to engage in a "meaningful

**ORDER ON REPORT AND RECOMMENDATION- 12**

dialogue" and/or demonstrate a sufficient basis for their denial of the claim. (Dkt. 139 at 9-13.) Defendants maintain that the Court should afford them broad discretion and deference because the decision denying the claim and/or their interpretation of the Plan was reasonable and they complied with ERISA's procedural requirements. (Dkt. 135.)

In concluding that Defendants abused their discretion in denying coverage for the claims, the Report was "less concerned" with the varying reasons given by BCI for denying the claim. (Dkt. 132 at 32.) Because the denials all consistently relied upon Exclusion P, the Report concludes the Plaintiffs were "clearly aware" that the denial was based on Exclusion P. (Dkt. 132 at 32.) The Report goes on, however, to question the consistency of BCI's application of Exclusion P as well as whether the Defendants' satisfied ERISA's requirement that they engage in a "meaningful dialogue" with the claimants. (Dkt. 132 at 32-36.) In the end, the Report concludes that the concerns regarding the failure to "elucidate the reasons" for the denial do not amount to an abuse of discretion. (Dkt. 132 at 36.) This Court's own view of how these factors impact the standard of review is somewhat different from the Report.

This Court agrees with the Report that BCI's responses consistently cited to Exclusion P and, therefore, Plaintiffs were aware that was the basis for the denial of their claim. The letters sent in response to Plaintiffs' claims and appeals all include Exclusion P as a basis for BCI's denial of coverage. (BCI 914, 919, 923, 927, 929.) As the Report discussed, however, those responses lacked specificity and/or substantive reasoning for the denial. Instead, the

**ORDER ON REPORT AND RECOMMENDATION- 13**

responses denying the claim fail to provide any substantive explanation of the reason for the denial beyond the reference to Exclusion P. BCI's responses denying Plaintiffs' initial claim were quite brief, just citing to or quoting Exclusion P. (BCI 929-30.) The later responses yielded a bit more explanation. Specifically, the letter dated June 30, 2011 responding to Plaintiffs' second appeal states BCI's finding that the services provided by both facilities to H.H. were mainly for behavior modification and/or custodial care which are both excluded by the policy. (BCI 927-28.) This letter also states that the determination to deny coverage was made based on the information provided by both facilities, which was extensive as demonstrated in the administrative record. (BCI 927.)

As the ERISA plan administrator, BCI owed a fiduciary duty to Plaintiffs to conduct an adequate investigation when considering a claim for benefits. *See Petrusich v. Unum Life Ins. Co. of America*, 984 F.Supp.2d 1112, 1117-18 (D.Or. 2013) (citing *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F.Supp.2d 1216, 1226 (D. Idaho 2013) (citations omitted). "This requires that the plan administrator engage in 'meaningful dialogue' with the beneficiary." *Id.* at 1118 (citing *Cady*, 930 F.Supp.2d at 1226 (quoting *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997)). ERISA regulations require that a plan administrator provide written or electronic notification of any denial of benefits. 29 C.F.R. § 2560.503–1(g)(1).[4] The notification must set forth "[a] description of any additional

---

[4] ERISA regulations specify the manner and content of the notification that a plan administrator is required to send to a claimant upon making an adverse benefit determination. The requirements provide, in relevant part,

material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary[.]" 29 C.F.R. § 2560.503–1(g) (1)(iii). This notification must be made "in a manner calculated to be understood by the claimant." *Id.* at (g)(1). The Ninth Circuit has interpreted this regulation as requiring "a meaningful dialogue between ERISA plan administrators and their beneficiaries." *Booton*, 110 F.3d at 1463 ("In simple English, what this regulation calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries."); *see also, Salomaa*, 642 F.3d at 680. Reasons for a denial of benefits must be explained by plan administrators "in reasonably clear language," and if the administrators "believe that more information is needed to make a reasoned decision, they must ask for it." *Booton*, 110 F.3d at 1463.

It may be that Defendants did not need additional information in this case to make their determination but that does not relieve them from ERISA's procedural requirements to provide an explanation for the denial that is meaningful. This is particularly true here given the well-articulated position presented by the Plaintiffs in their responses and appeals of the

---

The notification shall set forth, in a manner calculated to be understood by the claimant (i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based; (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review[.]

29 C.F.R. § 2560.503–1(g)(1).

**ORDER ON REPORT AND RECOMMENDATION- 15**

denials of the claims. (BCI 5-8, 585-89.) Had the Plaintiffs' been less specific in their claims and arguments in support of coverage, the Defendants' non-specific response may have sufficed. In this case, however, the Plaintiffs' position challenging the denials of the claim was clearly stated and made based upon materials in the record. The Defendants failed to engage in a meaningful dialogue with Plaintiffs to explain the basis for their decision to deny the claim. While bare citations to sections of a plan that clearly explain the basis for a denial may often be adequate, the claim in this case clearly required a more substantive response from BCI in order to satisfy the requirement that the plan administrator engage in a meaningful dialogue with the beneficiary. This concerns regarding ERISA's procedural requirements is properly considered by the Court in its determination of the level of deference to apply in deciding whether the Defendants abused their discretion in this case. In this regard, the fact that the Defendants failed to engage in a meaningful dialogue with their claimants has been weighed against the Defendants in this case.

As to the Defendants' mistaken assertion of lack of medical necessity as a basis for denying the claim, the Court has considered that fact only in so far as it was another reason given by BCI for the denial of the claim. The fact that this basis was ultimately withdrawn has not, however, been factored in to the Court's application of the abuse of discretion standard of review. *See Salomaa*, 642 F.3d at 674 ("a single honest mistake in plan interpretation administration does not deprive the plan of the abuse of discretion standard.") (citation and quotations omitted).

**ORDER ON REPORT AND RECOMMENDATION- 16**

Based on the foregoing, the Court finds the abuse of discretion standard of review is applicable in this case. The Defendants' decision denying the Plaintiffs' claim is afforded an appropriate amount of discretion taking into consideration the factors as stated herein – lack of meaningful dialogue and varying basis for the denial. That is to say, the Court finds the level of discretion appropriate in this case is somewhat less broad than the defense has argued for but less restrictive than Plaintiffs seek. With this framework in mind, the Court now considers the parties' objections as they go to the interpretation of the Plan.

**B.      Interpretation of Exclusion P**

Healthwise contends the Report's interpretation of Exclusion P's language is erroneous, contradicts its own findings, and conflicts with Ninth Circuit precedent. (Dkt. 135 at 8.) Specifically, Healthwise asserts the interpretation is incorrect because the generalized excludable treatment method identified in Exclusion P – behavioral modification – is not a recognized Covered Service and yet the Report still concluded that those treatments were covered. (Dkt. 135 at 7-10) (discussing Dkt. 132 at 38 n. 18.) Further, Healthwise argues the Report failed to give the appropriate deference to the ERISA plan administrator's determination under the abuse of discretion standard of review. Plaintiffs counter that the Report correctly interpreted Exclusion P and applied the appropriate standard of review and level of deference in concluding that the claim was covered under the Plan. (Dkt. 139.)

This objection goes to the Report's conclusion that H.H.'s treatments were for Psychiatric Care Services which are included under the Covered Services section of the Plan

**ORDER ON REPORT AND RECOMMENDATION- 17**

and, therefore, were covered. The Report considered Healthwise's interpretation and concluded that to read Exclusion P in this way "would make meaningless the 'except as specified' language within Exclusion P." (Dkt. 132 at 38 n. 18.) The Report's findings in this regard are consistent with the Plaintiffs' position that H.H.'s residential treatment was for "behavioral abnormalities" which fall within the Covered Service language of the Plan. In particular, the Psychiatric Care Services, Inpatient Psychiatric Care, and Mental and Nervous Conditions coverage provisions. Defendants, however, contend that H.H.'s treatment was for "behavioral modification" which is excluded under Exception P and not otherwise found in the Plan's Covered Services. Plaintiffs recognize that "behavior modification" treatment is excluded while "behavioral abnormality" is covered but argue that BCI failed to show it considered or explained this distinction when it denied coverage. Plaintiffs maintain the record cited here by both the Report and Healthwise demonstrate that H.H.'s treatment was for "behavioral abnormalities" and, therefore, covered under the Plan as a Psychiatric Care Service. (Dkt. 139 at 4.).

This Court has reviewed the parties' objections, initial briefing on the Motions, and the entire record herein *de novo*. Having done so, the Court respectfully disagrees with the Report. The Report finds that because H.H.'s primary diagnosis has always been for mood and eating disorders, her treatment fits within the Plan's definition of "Mental or Nervous Condition" which falls under Psychiatric Services and, therefore, is not excluded by Exclusion P. (Dkt. 132 at 37-39.) The Report concludes that Defendants abused their

**ORDER ON REPORT AND RECOMMENDATION- 18**

discretion in not so finding. While the Report's interpretation, which is shared by Plaintiffs, is certainly reasonable, the standard applicable here is whether or not BCI's determination was reasonable; not the reasonableness of the Plaintiffs' position.

The Defendants concluded that the treatment received by H.H. at these facilities constituted "behavioral modification" excluded under the Plan.[5] That determination is afforded the deferential review discussed above. In reviewing the records and materials compiled by both facilities and the entire record herein, the Court finds that Defendants' interpretation of the Plan is reasonable and not an abuse of discretion. The determination that the treatment constitutes "behavioral modification" and not "behavioral abnormality" is a close call. There are facts contained within the materials supplied in the record that support both interpretations. Again, the question here is whether the Defendants' benefits decision is unreasonable; that is to say, it is illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See Stephan*, 697 F.3d at 929. Taking into consideration the concerns noted above – the Defendants' shifting positions and the lack of

---

[5] In their briefing on these Motions and objections, the Defendants also argue the claim was denied because the treatment was "educational therapy" which is excluded under Exclusion P. (Dkt. 108 at 14) (Dkt. 135 at 2.) This Court agrees with the Report's conclusion that the Defendants' contention that "educational therapy" was a basis for the denial is an expansion of the reasons given by Defendants during the administrative review process. (Dkt. 132 at 36 n. 17.) The Report properly considered the administrative record in this case. Regardless, this Court has reviewed the record in this case *de novo* and finds that the denial of the claim based on the treatments being "educational therapy" is an abuse of discretion. While H.H. attended educational programs while at Aspen and New Haven, it is clear from the records of both facilities that her treatment did not consist "mainly of educational therapy." The records instead reflect that H.H. was intelligent and scored high on her education testing. H.H. was undoubtedly at these facilities "mainly" for reasons other than "education therapy," i.e., to address H.H.'s mood disorder and self harming/violent tendencies.

ORDER ON REPORT AND RECOMMENDATION- 19

a meaningful response to the claim – the Court concludes that the Defendants' interpretation

of the Plan and denial of the claim was reasonable and not an abuse of discretion.

The Covered Services section of the Plan states that covered psychiatric care services

include, as applicable here:

1. Covered Psychiatric Care services include Intensive Outpatient Program (IOP), Partial Hospitalization Program (PHP), Residential Treatment Program, psychological testing/neuropsychological evaluation testing and Electroconvulsive Therapy (ECT). Payments for Inpatient or Outpatient Psychiatric Services apply to Covered Services furnished by any of the following:
   • Licensed General Hospital
   • Alcoholism or Substance Abuse Treatment Facility
   • Psychiatric Hospital
   • Licensed Clinical Social Worker (LCSW)
   • Licensed Clinical Professional Counselor (LCPC)
   • Licensed Marriage and Family Therapist (LMFT)
   • Clinical Psychologist
   • Physician

2. Inpatient Psychiatric Care
   The benefits provided  for Inpatient hospital services and Inpatient medical services in this section are also provided for the care of Mental or Nervous Conditions, Alcoholism, Substance Abuse or Addiction, or any combination of these.

(BCI 567-68.) The Plan then defines Mental or Nervous Conditions as:

**Mental Or Nervous Condition**-means and includes mental disorders, mental Illnesses, psychiatric Illnesses, mental conditions, and psychiatric conditions (whether organic or  inorganic, whether of biological, nonbiological, chemical or nonchemical origin and irrespective of cause, basis, or inducement). Mental and Nervous Conditions, include but are not limited to: psychoses, neurotic disorders, schizophrenic disorders, affective disorders, personality disorders, and psychological or behavioral abnormalities associated with transient or permanent dysfunction of the brain or related neurohormonal systems.

**ORDER ON REPORT AND RECOMMENDATION- 20**

(BCI 567.) Again, Exception P of the General Exclusions and Limitations section of the Plan, upon which Defendants have based their denial, states that no benefits will be provided for services, supplies, drugs, or other charges that are:

> For Inpatient or Outpatient Custodial Care; or for Inpatient or Outpatient services consisting mainly of educational therapy, behavioral modification, self-care or self-help training, except as specified as a Covered Service in this Plan.

(BCI 569.) Defendants argue that BCI determined the treatments at these facilities constituted behavioral modification programs rather than any psychiatric treatment noting: H.H. had been treated and was making good progress with her eating disorder, had not been diagnosed with a mental disorder, had not been entered in the programs at the direction of a physician, and was enrolled by Lisa O. for attitudinal and behavior modification reasons (i.e., refusing to participate in treatment and acting out physically). (Dkt. 108-1 at 15-16.)[6] In sum, Defendants argue BCI correctly determined that H.H.'s treatments at Aspen and New Haven were excluded from coverage by Exclusion P because the treatments were for behavior modification rather than to treat any behavior abnormalities or psychiatric medical concerns. (Dkt. 135 at 6, 13-16) (BCI 927-31, 1012-14) (Dkt. 108-3 at 11) (BCI 1112.) Plaintiffs contend that residential treatment programs for mental or nervous conditions are a covered service under the plan consistent with the conclusion reached in the Report. (Dkt. 139.)

---

[6] Plaintiffs' argued in their initial response brief to Healthwise's Motion for Summary Judgment that Healthwise had "cherry-picked" from the medical records and, specifically, disputed the Defendants' contention that H.H. had not been diagnosed with a mental disorder and/or other conditions. (Dkt. 118 at 9-16.) The Court noted this argument when it conducted its *de novo* review of the record in this case.

**ORDER ON REPORT AND RECOMMENDATION- 21**

The records of Plaintiff H.H.'s treatments show that prior to her enrollment at Aspen and New Haven, she had been treated for an eating disorder, had written a suicide note, and had been "scratching" which prompted Plaintiff Lisa O. to take her to a voluntary facility in Boise, Idaho. (BCI 179-82.) Thereafter, Lisa O. enrolled H.H. at two different Utah facilities – Aspen Educational Group, Inc.'s Institute for Behavioral Assessment ("Aspen") and New Haven Residential Treatment Program and Boarding School for Teen Girls ("New Haven") – which provided the treatment that is the subject of the claims at issue in this case.[7] The record reflects that the treatments provided to H.H. at these two facilities included regular treatment therapy sessions, education courses, activities, recreation, and tracking of H.H.'s overall well-being.

Aspen completed a Behavioral Assessment and Psychiatric Evaluation revealing the presence of an eating and mood disorder and other moderate to sever conditions including self harm and violence. (BCI 193-204, 242-44.) Aspen also completed a Psychological Evaluation which yielded similar findings. (BCI 288- 92.) While at Aspen, H.H. had weekly group therapy sessions, met with either a physician or therapist, had general well-being exams, and/or attended educational and recreational programs . (BCI 205-236.) Aspen also compiled a Multidisciplinary Report which provides a comprehensive summary of H.H.'s treatment at that facility. (BCI 372-405.) New Haven assembled a Master Treatment Plan

---

[7] H.H. was enrolled at a wilderness program in Southern Idaho prior to her going to Aspen and New Haven. (BCI 95.) She was discharged from this program after approximately one day as the program determined she was in need of a higher level of care. (BCI 243.)

which found that H.H. had conditions similar to those Aspen had observed. (BCI 293-94, 321.) The treatment at New Haven involved similar regular individual, family, and group therapy sessions as well as an educational program and recreational activities. (BCI 296-354.) H.H. met regularly with psychiatrists, therapists, and physicians while at New Haven.

The Court has reviewed the records from both facilities and finds that Defendants reasonably determined that the types of treatments and services provided to H.H. were for behavioral modification. In making this determination, the Court is in agreement with the factual background as stated in the Report and finds that the Report accurately conveys the underlying records in this case. (Dkt. 132 at 18-22.) To that end, this Court need not restate the details of those records in this Order. Where this Court differs is in the application of the abuse of discretion standard of review to that record.

The Defendants' conclusion that H.H.'s treatment, while no doubt sever, was for correction of behavioral modification, and not behavioral abnormality, was reasonable given the nature of H.H.'s conditions and the types of treatments provided. The therapy and programing H.H. participated in were geared towards modifying her behaviors arising from her anorexia, depression, self harming, and self harm/violent conduct. That those treatments were not for the purpose of addressing a mental disorder or illness as much as they were to correct behavior is a reasonable conclusion based on the record in this case. As such, this Court finds the Defendants did not abuse their discretion in denying the claim based on Exclusion P. For that reason, the Court will deny Plaintiffs' Motion for Summary Judgment

**ORDER ON REPORT AND RECOMMENDATION- 23**

and grant the Defendants' Motion for Summary Judgment.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Report and Recommendation entered on February 24, 2015 (Dkt. 132) is **ADOPTED IN PART AND REJECTED IN PART** as stated herein and THEREFORE IT IS HEREBY ORDERED as follows:

1)   Defendant Blue Cross of Idaho Health Service, Inc.'s Motion for Partial Summary Judgment (Dkt. 99) is **DENIED**.

2)   Plaintiffs' Motion for Summary Judgment (Dkt. 103) is **DENIED**.

3)   Defendant Healthwise, Inc.'s Motion for Summary Judgment (Dkt. 108) is **GRANTED**.

4)   The parties are directed to confer and notify the Court as to how they intend to proceed on any remaining claims in this matter on or before **June 29, 2015**.

DATED:  **May 28, 2015**

Honorable Edward J. Lodge
United States District Judge

**ORDER ON REPORT AND RECOMMENDATION- 24**